IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JACKIE CARTER,

                Plaintiff,            ORDER

v.

                                  09-cv-437-wmc

DYLAN RADTKE, DAVID LIPINSKI,
LORI ALSUM, STEVE HELGERSON,
DARCI BURRENSON, RICK RAEMISCH,
GREGORY GRAMS, JAMES GREER,
JANEL NICKEL and DALIA SULIENE,

                Defendants.

---

Plaintiff Jackie Carter is proceeding in this case on claims that prison staff are acting with deliberate indifference to serious medical needs concerning his feet, rectum and pain management. During the lawsuit, Carter seeks an injunction mandating certain preliminary medical care. Because the evidence Carter has provided to date does not support it, his motion for preliminary injuctive relief will be denied.

BACKGROUND

The court held a telephone status conference on November 12, 2010, to determine how best to address Carter's motion for preliminary injunctive relief. Following the conference, defendants were ordered to respond to Carter's allegations that prison staff withheld medically-authorized shoes sent to him by his family, and that he had been denied necessary medical treatment for: (1) his feet (particularly access to appropriate footwear); (2) rectal problems (particularly ongoing bleeding issues); and (3) pain (particularly repeated, unjustified reductions in pain medications).

Copy of this document has been provided to: [handwritten]
this ___ day of ___ 20 __
by ___
M. Hardin, Secretary to
Judge William M. Conley

Defendants submitted a letter from defendant Janel Nickel, security director of the Columbia Correctional Institution, stating that Carter has (1) "special order" velcro boots to use while he is in segregation and (2) "approved personal athletic shoes" for use when he is not in segregation. In addition, defendants provide an affidavit from one of the named defendants, Dr. Dalia Suliene, detailing Carter's recent medical history. She states that there has been no documented history of Carter's alleged rectal bleeding, but that he has been given treatment for hemorrhoids, such as antacids, stool softeners and ointment. Also, she states that he has been prescribed several different medications for pain management.

Dr. Suliene also states that Carter has refused to attend several medical appointments, but that he is now wearing his velcro boots and is willing to go to his scheduled appointments. (It is unclear which shoes Carter wears to appointments, but Suliene states that Carter has been allowed to wear his personal shoes when being transported out of the prison.) Finally, she states that there is no documentation of Carter's feet being injured by wearing the velcro shoes in segregation. Dr. Suliene also provided eight pictures of Carter's feet, taken on November 15, 2010, which appear relatively unremarkable, other than what may be permanent scarring on his lower leg from his earlier burn accident.

In its November 24, 2010 order, the court directed Carter to submit a response to Suliene's affidavit. Defendants were also directed to submit an affidavit explaining whether it would be possible to provide Carter with his personal shoes in segregation or during transport for medical appointments.

Defendants then submitted an affidavit from Security Director Nickel, stating that Carter is not allowed to wear his "personal shoes" in segregation for security reasons. Specifically, Nickel's explained that "hard footwear" could be used to attack guards or

2

otherwise cause disturbances. Also, shoelaces are not allowed in segregation, so Carter's personal shoes would not provide him with the ankle support he needs in any event. The velcro boots do provide this support. Finally, Nickel avers that Carter is transported by wheelchair when he has an appointment in the health services unit, so there is no need for him to wear his personal shoes.

In response, Carter submitted his own affidavit continuing to dispute many of defendants' contentions. Carter continues to claim to have inadequate shoes. Although he has started to wear the velcro boots in segregation, they do not fit. As a result, Carter states that the boots tear his skin, blister his feet, and do not provide proper support for his ankles, which remain in pain. Carter admits that he has missed some medical appointments, but did so because of his severe foot and ankle pain, and because prison staff would not transport him in a wheelchair.

Regarding his rectal problems, Carter states that he has shown staff blood on his toilet, other inmates have reported it, and he has filed grievances about it. For a time, he was even placed in a single cell because he was bleeding so much.

Finally, regarding his treatment for pain, Carter states that Suliene reduced his pain medications despite a medical specialist's recommendation to raise them. Carter further claims the medication was reduced after he filed grievances about his treatment. Carter also avers never receiving the prescribed "combination therapy" and that Suliene has now refused to see him.

DISCUSSION

"The granting of a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Machinery Co. v. Dresser*

3

*Industries*, 749 F.2d 380, 389 (7th Cir. 1984). In deciding whether Carter is entitled to preliminary injunctive relief, this court must consider four factors:

> 1) whether the plaintiff has a reasonable likelihood of success on the merits; 2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; 3) whether the threatened injury to the plaintiff outweighs the threatened harm an injunction may inflict on defendant; and 4) whether the granting of a preliminary injunction will disserve the public interest.

*Pelfresne v. Village of Williams Bay*, 865 F.2d 877, 883 (7th Cir. 1989).

Here, Carter has failed to show that he has a reasonable likelihood of success on the merits of his claims. For Carter to prevail on his Eighth Amendment claims, he must show that he has "serious medical need[s]" and that prison officials were "deliberately indifferent" to these needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). Assuming that Carter has serious medical needs concerning his feet, rectum and pain management -- and the evidence is conflicting even on this -- he has failed to show that defendants have been deliberately indifferent to his needs.

Deliberate indifference may be inferred based upon a medical professional's erroneous treatment decision "only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996). Carter's mere disagreement with a doctor's medical judgment, inadvertent error, negligence, malpractice or even gross negligence in providing treatment is insufficient to establish deliberate indifference. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515, 518 (7th Cir. 2002).

4

While obviously Carter disagrees with defendants' medical decisions, at this point in the proceedings he has failed to show that the treatment received is a substantial departure from accepted professional standards. First, regarding his feet, it appears that Carter may wear his personal shoes when he is not in segregation. The question is whether defendants are acting with deliberate indifference by giving Carter velcro boots while in segregation. Although Carter states that the boots tear and blister his skin, the pictures of his feet do not corroborate his statements — the skin on his feet does not appear to be torn or blistered. Carter states that black marks seen in the photos show where blisters are healing, but does not address his apparent lack of *current* injuries requiring extraordinary, pre-judgment intervention by this court, especially since Carter states that he has now agreed to wear the boots.

With regard to Carter's rectal bleeding, Suliene states that there has been no documented rectal bleeding, but that he has received treatment for hemorrhoids. In addition, the record shows that: defendants have attempted to respond to plaintiff's complaints; in the past, Carter failed to attend several appointments for lab testing in response to his complaints; and now that Carter has agreed to wear his velcro boots, upper and lower gastrointestinal endoscopies have been scheduled.

Finally, with regard to his pain medications, Carter argues that Suliene's affidavit is evidence that his medications were reduced in retaliation for his complaints. But Suliene's affidavit shows she only reduced his methadone marginally (from 30 mg doses to 25 mg to 20 mg) and that these reductions occurred in the context of Carter being prescribed serval other pain medications.

5

In short, Carter has failed to present sufficient evidence that defendants acted with deliberate indifference to his serious medical needs. The testimony currently in the record indicates instead that Carter has received treatment for his various medical needs, albeit not the treatment he would prefer. Accordingly, Carter's motion for preliminary injunctive relief will be denied, at least at this point.

Even so, Carter's written submissions continue to demonstrate that he has difficulty explaining his position and following court procedures. At a later juncture in this case, it may be that Carter or appointed counsel will be better able to present a case for a preliminary or permanent injunction, as well as monetary damages. Thus, Carter remains free to renew his motion for preliminary injunctive relief at a later date provided evidence is advanced of imminent, irreparable and unaddressed harm.

ORDER

IT IS ORDERED that plaintiff Jackie Carter's motion for preliminary injunctive relief, dkt. 26, is DENIED without prejudice to him filing a renewed motion at a later date.

Entered this 23rd day of June, 2011.

BY THE COURT:

_____
WILLIAM M. CONLEY
District Judge